LLC, Michigan Limited Liability Company, and the Larry J. Winkett Women's Trust, a trust organized under Michigan law, v. Satyan Comp, Limited, or I guess not just the 15 B-6 dismissal that we appeal from, and the question or questions that I would like to The first is, does a party defrauded by a fiduciary have to plead anything more than active concealment that deprives them of the means of discovery of a claim to defeat a res judicata defense? That is, that the claim should have been litigated sooner, the claim that was concealed. And secondly, does a mere passage of time bar an amendment to a complaint dismissed without entry of final judgment? And I'll turn to the first issue first. This court signaled in Browning v. Levy that wrongful concealment of a claim bars the assertion of res judicata to bar a claim. In Browning, this court cited with approval to the McCarty case, which is a Tenth Circuit case, which essentially stood for the proposition that wrongful concealment of a claim, preventing discovery of that claim, bars use of res judicata in a subsequent proceeding. And that is consistent with the restatement of judgment, section 26, comment J, which of course we cited to in our briefing. Now, this case is a little bit different because there is no Sixth Circuit reported decision that addresses the pleading requirements for wrongful concealment where a fiduciary asserts a res judicata defense. This is a joint venture, of course, between Venture Global and Satiam. And in the context of that joint venture, Michigan law provides that there is the duty of finest loyalty and that in fact there is an obligation to make full disclosure to your fellow fiduciary. So here we have essentially a heightened obligation on the part of the fiduciary to make full disclosure where that fiduciary is now asserting res judicata as a defense saying, well, gee, you should have known that I was engaged in a billion dollar fraud over a ten year period of time and you didn't. And now it's too late. Now, this court cited to in Campbell two Seventh Circuit cases, and specifically the Sperry case and the Tamera case, which it said were cases that would justify use of wrongful concealment to bar res judicata defense. And we think those cases are instructive because they both turn on the issue of whether or not the means of discovery of the claim barred by the defense of res judicata was unavailable to the plaintiff. And we believe that's the case here. The Carrier decision, and again, all these decisions that I'm now citing from this circuit, do not deal with a situation like ours where there's a fiduciary relationship. But nevertheless, these cases I think are helpful. The Carrier decision says that where you have active concealment, the level of due diligence that is required on the part of the plaintiff is essentially reduced. More importantly, in that case, the core holding was that there's a question of fact that must be sorted out at trial to determine whether or not, in fact, the plaintiff knew or should have known of the claim that existed at some prior time. But perhaps most instructive is this court's decision in the Lutz case, which was decided in 2013 and written by Presiding Judge Griffin, 717F3459. That was a statute of limitations tolling case. It's a case that's been decided since briefing in this case. But it is quite instructive because the ultimate determination in that case turned on whether or not there was a means available to discover the fraud. Now, here that is the essence of our case. This is a 10-year fraud, India's version of Enron, that was perpetrated by Satyam, involving over a billion dollars of overstated financials. Essentially, they cooked their books, then covered the cooking of their books by providing counterfeit audits, essentially prepared by Price Waterhouse, but they weren't. And then finally, they even concealed this fraud from their upper management, all but the six principals who were ultimately involved in the fraud, some of whom are now in prison or at least being held in prison. The Indian system doesn't move along very quickly. And we have alleged in this case precisely the sort of concealment and inability to discover the fraud, both in our original complaint and in our amended complaint. We alleged that they concealed the fraud through essentially baking their financial statements, that they concealed the fraud when we discussed with them issues that concerned the operation of the joint venture, when they made representations to us that the way in which they were managing the joint venture business, its vertical arrangement where Satyam would take the business and then subcontract it to Fez was consistent with a very successful model that Satyam had employed and was employing from 2001 on, when in fact the model of Satyam was to generate false invoices internally that showed them having Fortune 500 business clients and customers that they represented to us was going to be the source for business in this joint venture, when in fact they didn't have these customers. They didn't have the business and they didn't have the revenue or the profitability to the tune of $1 billion over a 10-year period of time. So what date do you concede that you knew or should have known of the fraud? When Ramalinga Raju confessed... Not before? Not before, sir. Okay, that's 2009. Yes, it is, sir. You knew that Satyam, you asserted that they had breached this non-compete and shareholders agreement back at the time of the London arbitration, had you not? We did. Now, why would that not have put you on notice that something was amiss? Well, these were contractual claims, and the focus of our investigation there was whether or not Satyam was violating the terms of the contractual arrangement, and in turn their fiduciary relationship, by essentially taking business and skimming an amount off the top, which we understood that they were doing. This was with TRW, right? This is TRW. Essentially, as they called it, is an administrative fee. But again, this arrangement was described to us as consistent with this vertical model of business that Satyam was employing in its IT business. And again, our focus here was were they properly managing the joint venture, not what was going on inside their IT business. But to discover that issue, didn't you have to get into the books? And once you get into the books, weren't you or shouldn't you have been able to discover they were cooked books? Well, no, we did not get into Satyam's books, and really would have had no portfolio to do so. The books that we were looking at were the joint ventures books, the books of Satyam Venture Engineering Systems, which was the joint venture. We called it SFEZ for short. But that was the only books that were germane to our analysis of the way in which Satyam was managing this vertical model of business. And when we questioned them about it, which we recite in detail in our amended complaint, they basically said this is the same model that we use in our IT business. But we would have had no portfolio to look at their audited financial statements. They were a publicly traded company. I'm not sure we wouldn't have seen anything anyways. The books were cooked. I mean, short of our doing an audit in the context of a dispute over an isolated joint venture, we would have had no ability to learn of that concealed fraud. And really, let me put it more simply. If we proved every claim in that arbitration, we would have proved that they breached the contract. We would have proved that they were greedy. But we wouldn't have proved that they were engaging in a billion-dollar fraud. We wouldn't need to prove it. Moreover, the proofs regarding their breach of a shareholder agreement come nowhere near the level of proofs we would need to prove, as in the RICO case, where we have to show predicate activity over a lengthy period of time that constitutes a pattern of racketeering activity. And this fits in with the Westwood decision that says there is no identity of claims here. The facts necessary to establish the RICO claim here and those necessary to establish that they weren't properly managing the joint venture are completely distinct and different. But, of course, we don't get to the identity of claims issue because the wrongful concealment issue really decides this case. In the face of the pleading that we have made in this case, both in our original complaint, paragraphs 29 through 36, this is at the record 42-1, paragraph 55, paragraph 50-52, and paragraph 89, all of those allegations of concealment and that there was no means available to us to discover this fraud suffice. Now, the court ultimately said, well, you've got to engage in diligence. And quoting former President Reagan, he said, trust but verify. Well, that's a nice phrase, but how do you verify that the audited financial statements of a publicly traded company are no good when even upper management of that company is unaware of the fraud that's being perpetrated by its six principles? Moreover, why would we even ask about that in the context of a dispute over the way in which they are managing our joint venture? There's a total disconnect here. And, of course, our ultimate complaint here is, is that while we're dealing with them over this 10-year period of time, we have a joint venture partner that is insolvent, whereas they're telling us and they're telling the world, and the world believes by virtue of its stock price, which continued to climb until the confession,  Well, we have no reason to even question their solvency, their financial stability. Remember, this is a joint venture that we entered into in the first instance because we believed that Satium was successful, solvent, and a suitable partner. Well, you don't have a suitable partner if the partner is engaging in fraud. And there was no way for us to know that in the context of our dealings with them, short, as I said, of auditing their financial statements and doing something that... So how were you damaged dealing with an insolvent partner that you didn't know was insolvent? Well, first of all, the $735,000 that we invested, which we pleaded, the expectation damage associated with a joint venture that hadn't been properly operated and without the taint and contamination of an entity who was motivated to strip it of assets would have grown much more quickly and would have been much more profitable. And finally, we've been completely disgorged of our interest in the joint venture. By virtue of the arbitration, which we seek to attack in this case as well, we have been completely... How do you collaterally attack the arbitration in this case? Well, under Rule 60 and under the Begley decision, U.S. Supreme Court decision, we are entitled to equitably challenge the judgment that was entered in this case enforcing the arbitration on the basis that it was infected by fraud. But you just told me that the fact that they're a fraudulent invested company and the issues in the arbitration are totally different and therefore you could not have gone back to find out that this is totally an underfunded corporation because the issues are so different. Now you're trying to tell me that they're related. That seems contradictory. That's an excellent question, and there is a way to reconcile the two. In the first instance, had we known that our joint venture partner was insolvent as early as 2002, which we alleged, we would have gotten out of the joint venture. We would have dissolved it at that time and may have been able to use the joint venture ourselves to build the company to a higher level of profitability. Number two, the connection in terms of the contamination of the arbitration is not only was Satiem cooking their own books, they were cooking the books of the joint venture as well. The same accounting firm who issued audits on the Satiem side issued the audits in SVEZ. Okay. So if you'd known that, then you might have presented a different defense in the arbitration. Absolutely. And that affected your defense. Okay. I know your time is up. Would you address the motion to amend? Yes, I will. The motion to amend is fairly simple. It's not really necessary under Lutz, is it? It's not necessary if you believe under Lutz it's not necessary. Yeah, I mean, Lutz is the law, and that helps you on the motion to amend issue, doesn't it? It does help us on the motion to amend. And Lutz is the law. And, of course, it supports this circuit's consistent holdings in Ohio Edison and Moore v. City of Paddock. It's a little difficult to pronounce. But, essentially, we're entitled to one opportunity to amend to satisfy any deficiencies that may exist in the complaint. We certainly have done that in connection with our medical complaint. But there's really one other point, and that is that the cases that are relied upon by the district court, the Morris v. McWhorter and the Patterson v. Navartis case, both of those cases were cases where final judgment had already been entered. And this court has already held that there was no final judgment here in denying the motion to dismiss that's been filed by Satiem, who argued, oh, gee, this is not a Rule 15 motion. This should be a Rule 59 motion. This court has said, no, there was no final judgment entered, merely a dismissal pursuant to 12b-6. And that triggers Ohio Edison, Lutz, and the rest of the cases that say you're entitled to at least one opportunity to amend to cure the alleged defects, which, in this case, we don't believe even existed. Judge DeGrange, anything further? Thank you. Judge Gelman? All right, I didn't catch how many minutes you reserved for rebuttal. I reserved three. Three. You'll still have three minutes. Thank you. Good morning. Good morning, Your Honors. My name is Jordan Leder. I am here on behalf of Apelli Satiem Computer Services. May it please the Court, these appeals are just the latest attempts in a decade-long period by VGE, Venture Global Engineering, to avoid the consequences of its own failures with respect to the party's joint venture. The district court correctly recognized the appellant's complaint is just another attempt at relitigating the issues that were fully litigated in the party's 2006 London arbitration. Aren't they really different issues? I would like to hear why you think they are the same issue. I guess to put it in the vernacular, there's a difference between you're cheating me in our current deal and you lied to me to get me into this current deal. So why isn't that a distinction that keeps it from being the same transaction or even the same series of transactions? Because under the res judicata rules, Your Honor, if we can show that there was a final decision on the merits, that it was between the same parties or other privies, that they should have brought these claims during the arbitration, and that there's an identity of issues, which this court has determined on a number of occasions is the series of transactions, then they would be barred from bringing these claims now. Assuming that on the third provision you're not prevented from going forward by fraudulent concealment and assuming that they are, in fact, a part of the same series of transaction and occurrences. That's where I'm struggling. I don't understand how fraud in the inception of a relationship, fraud in creating the relationship, is part of a series that you talked about in the arbitration, which was fraud in the implementation of your relationship. I get it that they were both fraud, but aren't they different frauds? The theories are different, Your Honor, but in fact the arbitration was much broader than appellants will have you believe. The arbitration touched on everything, as Judge Cleland said, the formation and the operation of the joint venture. It touched on the entire six-year history of the parties working together and forming that, and a large part of that arbitration dealt with the negotiations of how we were going to enter into a joint venture, who's responsible for what aspects of the joint venture, what each side was going to bring to the joint venture, what Satyam represented it was able to. There was a significant amount of testimony about what Satyam represented it would bring to the joint venture and what VGE argued during the arbitration it failed to do, which is essentially the same thing they're arguing here, which is they say in a claim in their complaint that Satyam represented one thing but delivered something else, and it wasn't really what it represented. And on the identity of issues, Your Honor, Judge Cleland pointed out in his decision two separate instances that are in the complaint that were fully discussed, fully litigated during the arbitration. Paragraph 26 of the complaint discusses that their issue is that Satyam was diverting money from the joint venture, and that issue was completely litigated and found to be false during the arbitration, which was enforced by the district court and upheld by this court. And the only difference between what was alleged and discussed and litigated in the arbitration versus what's in the complaint is that they now ascribe a motivation to that alleged diversion of money. The motivation is Satyam was cooking its own books and had holes in its own financial statements and therefore had to figure out a way to fill those, and so it was therefore allegedly diverting money from the joint venture. Mr. Lender, regarding the scope of the arbitration, can you look at page 10 of your own brief? Yes, sir. All right. The second line says that the plaintiff alleged that Satyam breached its fiduciary duties by diverting revenues it received from customers for work at subcontract and refused to turn over. And then the next paragraph talks about parties hotly litigated and investigated the book values concerning these transactions. I mean, your own brief concedes that the arbitration was really focused on diverting the revenue from the customers and not on the net value of your company, right? Absolutely. That was not an issue that came up during the arbitration. All right. I just thought you just told me it was. I just thought you told me it was litigated in the arbitration, and that's not my understanding. So their claim today is that your corporation was fraudulently underfunded, and that wasn't litigated in the arbitration, was it? That's correct. And what I meant to say— And so how are the claims the same? They don't have to be the same, Your Honor. That's the answer. The answer is they have to arise out of the same series of transactions. Well, I don't see it. I see it, as Judge Scrantz said, you've got different transactions. You've got fraud in inducing your partner to enter into this joint venture, and then you have fraud in the management of the joint venture, and they're separate frauds. They may be separate acts by Satyam, but they're part of the same series of transactions that were fully at issue. And, yes, there was no discussion during the arbitration of the fact that Satyam may have been severely underfunded. But as all of the cases about fraudulent concealment hold, once you smell smoke, you have to investigate. Once you see— But the question is what fire are you smelling smoke from? They are smelling smoke from the fire that you are taking monies that should be attributable to our joint venture and should be shared monies, and you are instead pocketing them. That's a fire, and that's a fraud, and that was the fight at the arbitration. But you have, frankly, a bonfire over here that was how you drew this joint venture into creation, was that the accusation here is that we wanted an equal partner. We wanted someone who could perform, who had the assets and the basis to do this. You told us you had all that. Based on that fraud, we entered this relationship with you. I am also at a loss to understand how a fraud in the inducement into a relationship is identical as an identity of issues or the same series of transactions with fraud in the way you maintain and fulfill your duties within that joint venture. It's not enough that they're both fraud. They've got to be fraud in the same transaction. So give me your best argument to why this is the same series of transactions. As the district court found here, Your Honor, they don't have to be the same transaction. It's the series of transactions. All of these issues about how the parties were going to work together, what they each represented they would bring, how strong they were, venture global engineering represented it, had all of this business from the automotive companies that it did business with. It turned out they didn't have any of that business,  and the issue that they cared about at the arbitration and argued at the arbitration was Satyam wasn't the company that they said it was and wasn't going and wasn't contributing to the joint venture in the way that it represented. They talk about in the complaint in paragraph 55, all of the predicate acts that they say form the basis of their RICO claim. Yet if you look at them in paragraph 55, almost all of them are issues that were actually raised and discussed in the arbitration. Paragraph 55A1, the first predicate act they list, is they say that Satyam misrepresented facts in the business plan that was created in 1999. Well, that business plan was the subject of a tremendous amount of evidence and testimony at the arbitration. There are two and a half pages about it in the arbitration award. There's multiple references. But I'm still struggling with this because at that point, the complaint is that you said you could do this business, you said you were able, both of you I guess to one another, but in fact you didn't perform. There's no evidence at the London arbitration as I understand it that there was a multi-million dollar fraud going on. Because as I understand it, no one knew it until one of the six conspirators or whatever name you want to give them admitted it, not even upper management. So explain to me, perhaps we should turn to the fraudulent concealment issue because your opposing counsel argues that under the third element of res judicata, that is resolved by fraudulent concealment. Right. So the fraudulent concealment cases start with Browning in this court. And this court says there isn't a formula in res judicata cases, so we should look at the fraudulent concealment doctrine in the statute of limitations cases. And the leading case on that is the DACO case. And appellants criticize the district court for looking at the DACO case, but that's the case that all of the courts in this circuit use. And that says that in order to take advantage of the fraudulent concealment doctrine and therefore res judicata wouldn't apply, you have to plead that there's wrongful concealment, that plaintiffs didn't discover the misdeeds by the defendant, and that the plaintiff was duly diligent until the discovery of the fact. The district court basically assumed in plaintiff's favor the first two of those elements and said, okay, fine. You plead lots of allegations about Satiam concealing its own fraud, and you plead that you didn't know. But there isn't a single allegation in the entire complaint about taking any diligent steps, doing anything. So the district court found that they failed to plead any diligence so they couldn't take advantage. The district court didn't have the benefit of the opinion I wrote in Lutz v. Chesapeake. How does that change the equation here? Well, I'm not familiar with that decision, Your Honor. All right. It's about due diligence. Pleading is one of the holdings on it. And we held that due diligence was adequately pled in that case, and it seems very similar to this, that's all. Well, so one of the points that – You really don't know the case? I apologize. No, I don't know the case. All right. Here, the appellant says active concealment is different than just regular fraudulent concealment. And they cite throughout their papers the Campbell v. Upjohn case, and they say that that case holds here, that therefore they don't have to plead anything about due diligence. And in that case, Your Honor, this court said, diligence still needs to be pled in cases of fraudulent concealment, even active concealment, and we are not going to reduce the burden of pleading of due diligence. Even in cases of active concealment, we're not going to reduce it. And we specifically reject the Seventh Circuit cases that appellants talk about, the Tamera case and the Sperry case, because those are Seventh Circuit cases. We don't believe in that. Now, getting to the fiduciary duty argument that appellants made, that they also shouldn't have to plead anything about taking any steps to look into things because we were joint venture partners and there was a fiduciary duty, the first issue is that wasn't discussed, that wasn't raised at the district court level. So they shouldn't be heard to raise that issue here. And the second issue is that they say the district court should have taken their allegations that Satyam had an obligation to disclose its own fraud, alleged fraud to appellants, and should have credited them as a well-pleaded fact, but that's not a fact. That's a legal conclusion based on the fact that they were joint venture partners. And lastly, this court in Reed in September of 2012, in a fiduciary duty case, said that even where that's a case where it's a shareholder derivative case and the plaintiff said the management of the company had a fiduciary obligation to inform the shareholders of material information, and instead they were cooking the books and they were hiding things from the shareholders. And this court said in Reed, even in a fiduciary duty context, we're not going to reduce the DACO standard. Plaintiff still has to allege that it took steps to look. And here appellants took no steps to look. If I may just very briefly turn to the amendment. You're really out of time. Judge Gilman, any further questions? Thank you. We've got three minutes rebuttal. Thank you, Judge. Just a few points. First of all, the test set out in Westwood Chemical that has been cited as recently as 2010 in Dover v. U.S. by this court when it comes to identity of claims, and that is it's an identity of facts creating the cause of action. The facts concerning the fraud in Satyam's IT operation was not on the table in the arbitration and really couldn't be on the table because it was so far afield from what we were litigating, which was the way in which the joint venture was managed. Secondly, it's hard to believe that this argument is being advanced. We argue that fiduciary duty changes the level of diligence that's required in the circumstances. In the record, RE 20, page 336, and on numerous other occasions, it's hard to believe that argument is still being made. Thirdly, in this circuit, in the Ruth v. Unifund case, the court made the point, Judge Strach, that you made, which is that knowledge of an obvious fraud or claim does not equal knowledge of a latent fraud, and that's precisely what we have here. We may have been very unhappy about the way in which they were managing that joint venture, but that didn't mean that we knew that from the outset they had lied to us. The DACO decision is simply not this case. The DACO decision was a case where there were public decisions, congressional hearings, reports that were issued that were in the public realm long before the plaintiff in that case brought their claim. I'll sum up by simply saying this. This case is the poster child for no means available to discover the fraud. It is lutz on steroids. That's all I have. Any further questions?  The case will be submitted.